**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

LAZARUS MCDONALD                                                                 PLAINTIFF

v.                                                                 CIVIL ACTION NO. 3:23-CV-P77-JHM

TRANSIT AUTHORITY RIVER CITY et al.                                        DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Lazarus McDonald, a prisoner proceeding *pro se* and *in forma pauperis*, initiated this *pro se* 42 U.S.C. § 1983 action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, Plaintiff's claims will be dismissed.

### I. STATEMENT OF CLAIMS

Plaintiff names as Defendants Transit Authority River City (TARC), "(Female) Bus Driver," Emergency Medical Services of Louisville, "(Female) Paramedic (1)," and "(Male) Paramedic (2)." He states that on February 5, 2021, he boarded a TARC bus on Popular Level Road in Louisville and took a seat in the back. He states that about ten minutes into his bus ride, the bus driver stopped at a bus stop "that was down inside a bowl," where it was "pitch" dark to take a break because she was two minutes early; immediately thereafter a drunk driver rear-ended the bus at 60 miles per hour. Plaintiff states that the impact threw him from his seat, causing him head, neck, knee and back injuries. He states that he passed out and that when he came to, the female paramedic was asking him his name and whether he could get up from the bus floor. Plaintiff alleges that he tried several times and then informed her that he could not. He alleges that she then "out of the blue" grabbed him by the hood of his sweater and "snatched"

him by the neck, yelling to him to get up or she could not help him.  He states that he responded that he could not move or feel his legs, but she again grabbed his hood and "started pulling me by the neck" yelling for him to get up or she could not help him.  He then yelled at her that she was choking him and that he could not breathe  Plaintiff states at that point the male paramedic came on the bus, and they transported him by stretcher to the ambulance.  Once on the ambulance, the male and female paramedics asked him his name, but, Plaintiff states, that he was too emotional to speak.  Plaintiff alleges that both paramedics then "started using profanity words . . . and telling me that they should put me out of the truck into the freezing rain."

According to the complaint, the bus driver who was in the back of the ambulance "started crying and vomiting" because of the way the paramedics were treating him, and the paramedics left him alone at that point.  Plaintiff states that once they reached the hospital the paramedics continued to "badger" him about his name, but Plaintiff refused to speak to them "so they wheeled [him] to the back of the hospital and placed me in a room where I didn't get any medical attention until at least 2-3 hours where I layed in that room in mental and physical pain and agony."

Plaintiff states that he is "suing the bus driver for contributory negligence."  He alleges that EMS of Louisville is vicariously responsible and negligent in its hiring, training, supervising, and retention of its employees.

Plaintiff alleges that the paramedics intentionally, willfully or recklessly violated his constitutional First and Eighth Amendment rights and acted outside the scope of their employment.

Plaintiff states that he has organic brain damage "which caused me permanent impairment of earning power to receive money from donating plasma," as well as anxiety attacks when he thinks he might need assistance from paramedics.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

**A. Section 1983 claims**

The statute of limitations for § 1983 actions is governed by the limitations period for personal-injury cases in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Kentucky, § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. § 413.140(1)(a). *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). "Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run." *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)). A § 1983 claim does not accrue until the plaintiff knows or should know of the claim. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021); *see also Ruiz-Bueno v. Maxim HealthCare Servs.*, 659 F. App'x 830, 833-34 (6th Cir. 2016) ("[T]he statute-of-limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred.") (citing *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007)). When the face of the complaint shows that an action is time-barred, the case may be dismissed summarily upon screening. *Jones v. Bock,* 549 U.S. at 215.

Here, it is clear from the complaint that Plaintiff knew of Defendants' acts on the date that they occurred, *i.e.*, February 5, 2021. Consequently, the one-year state of limitations period expired on February 5, 2022.

Because Plaintiff is a prisoner, his complaint is considered filed on the date that he certified it was submitted to prison authorities for mailing, *see Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (holding that the mailbox rule "applies to civil complaints filed by pro se petitioners incarcerated at the time of filing"), which in this case was December 27, 2022, more

5

than 11 months after the limitations period had run.  The Court will dismiss Plaintiff's § 1983 claims as time-barred.

### B. State-law claims

The remainder of Plaintiff's claims sound in state law.  Because the Court will dismiss Plaintiff federal claims, it declines to exercise its supplemental jurisdiction over Plaintiff's state-law claims.  *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction).

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss this action.

Date:  July 12, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
4414.009

5